UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FRANCES A. KESSLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  1:08-cv-1126-SEB-DML |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## Order Remanding to Commissioner

Plaintiff Frances A. Kessler brings this action under 42 U.S.C. § 405(g) seeking review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). Acting for the Commissioner,[1] an administrative law judge (ALJ) found on April 20, 2007, that Ms. Kessler was not disabled and denied her claim for benefits. The Appeals Council later denied her request for review. Because the ALJ did not properly weigh the prior disability determinations of the Veterans' Administration, the court remands this matter to the Commissioner.

## I.  Facts

**A.  Introduction**

Ms. Kessler was 57 years old on June 17, 2000, the date she alleges she became disabled. She served as a nurse in Vietnam during 1971-1972 and saw many injured and mortally

---

[1] When the Appeals Council denies a claimant's request for review, the ALJ's ruling becomes the final decision of the Commissioner. 20 C.F.R. § 404.981 and *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

wounded soldiers.  She claims disability as a result of post-traumatic stress disorder (PTSD) with associated depression, hepatitis C infection, and a history of skin cancer.  Her complaints and symptoms primarily concern PTSD.

### B. Treatment History

Ms. Kessler began to suffer from the symptoms of PTSD and depression in 1983.  In 2000 (and again in 2006), the Department of Veterans Affairs ("VA") determined she was disabled, and awarded her disability benefits for PTSD and tinnitus.[2]  Ms. Kessler's VA disability benefit was her principal source of income.

Her tinnitus was so severe that she had trouble hearing telephone conversations.  Her symptoms of PTSD and depression included difficulty sleeping, nightmares, some suicidal thoughts, weight gain, depressed mood, low motivation, difficulty dealing with work and social relationships, inability to maintain long-term employment, and difficulty planning for the future.  She became frustrated easily and reported that she needed one day off to recover for each day she worked.  She could not tolerate authority and became angry and was prone to "blow off" at people.

She was able to care for her personal hygiene and complete household chores and errands.  Her Global Assessment of Functioning (GAF)[3] scores ranged from a high of 64 in

---

[2] "Tinnitus" is the perception of sound in the absence of an environmental acoustic stimulus.  The perceived sound is usually a pure tone or may include ringing, whistling, hissing, roaring, or booming.  Stedman's Medical Dictionary 1992 (28th ed. 2006).

[3] A GAF score is a rating on a scale from 0 to 100 that represents a clinician's judgment as to an individual's overall psychological functioning; lower scores indicate a greater level of impairment and higher scores indicate a higher level of functioning.  Am. Psychiatric Ass'n., *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 32-34 (4th ed., text rev. 2000).  A GAF between 61 and 70 indicates that an individual has some mild symptoms or difficulty in functioning, but is generally functioning well.

2000 and 2001, to a low of 45[4] in early 2003 and early 2004. Her GAF rose again in late 2004 to a score of 65.

Antidepressant medication did relieve some of her symptoms, ending her suicidal thoughts and helping her sleep. Her clinicians concluded that she could probably interview well enough to obtain employment and maintain it for a while, but her PTSD symptoms would eventually be triggered and she would lose the job or quit for fear of being fired. One clinician thought that she could possibly handle a work setting where she had minimal contact with others and was not intellectually challenged.

### C. Agency Evaluation

Three state agency psychologists reviewed Ms. Kessler's records at different times and concluded that she had a severe mental impairment, but that her impairment did not satisfy a Listing. A 2003 review found that she did not have any restrictions in her daily activities, but a 2004 review determined that Ms. Kessler had mild restrictions in her daily activities.

The 2004 review found that she was markedly limited in her ability to interact with the general public, but the review also explained that she would probably be able to relate adequately with coworkers and that she would not have any more serious interpersonal conflicts on the job than the general population. The review also determined that Ms. Kessler would work best in semi-isolation from others and would require a polite, encouraging supervisor. Another state agency psychologist agreed with this assessment.

### D. Hearing

The ALJ held an evidentiary hearing on January 18, 2007. Dr. Pitcher, a licensed clinical psychologist, testified about Ms. Kessler's mental impairments and determined that her

---

[4] A GAF score of 45 is indicative of moderate symptoms or difficulty in functioning. DSM-IV-TR at 34.

3

impairments did not satisfy a Listing.  She did opine, however, that Ms. Kessler would not be able to work as a social worker or clinical nurse.

When Ms. Kessler's attorney asked Dr. Pitcher whether she was familiar with VA disability ratings, she replied that she was not, but surmised that a 70% disability rating (the rating given Ms. Kessler by the VA in 2006) would seriously interfere with employment.

A vocational expert also testified that Ms. Kessler could not perform her past relevant work.  That expert determined she qualified for unskilled, medium-level jobs.

## II.  The ALJ's Determination Regarding Disability

### A.  Standard for Disability Determination

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…." 42 U.S.C. § 423 (d)(1)(A).  To be found disabled, a claimant must demonstrate that his physical or mental impairments prevent him from doing not only his previous work, but any other kind of substantial gainful employment that exists in the national economy, considering his age, education, and work experience.  *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the agency applies a five-step sequential analysis:  1) is the claimant presently unemployed; 2) is the claimant's impairment or combination of impairments severe; 3) does the impairment meet or exceed any of the list of specific impairments that the Commissioner acknowledges to be so severe as to preclude substantial gainful activity; 4) if the impairment is not specifically listed, is the claimant able to perform his former occupation; and, 5) if the claimant cannot perform his past work, is the claimant unable to perform other work in the national economy in light of age, education, and

work experience?  20 C.F.R. § 404.1520.  Except for step three, a negative finding at any other step precludes finding disability.  *Young v. Secretary of Health and Human Services*, 957 F.2d 386, 389 (7th Cir. 1992).  If the answer is affirmative at steps one, two, or four, the reviewer proceeds to the next step.  *Id*.  An affirmative answer at steps three or five results in a finding of disability.  *Id*.

### B. The ALJ's Findings

The ALJ issued his written decision on April 20, 2007.  For step one, the ALJ determined that Ms. Kessler had not engaged in substantial gainful activity.  For step two, the ALJ determined that Ms. Kessler had the severe impairments of PTSD with associated depression, hepatitis C infection, and a history of skin cancer.  The ALJ determined for step three that the impairments or combination of impairments did not meet or medically equal one of the listed impairments.  For step four, the ALJ found that Ms. Kessler could not perform her past relevant work.  For step five, the ALJ used the Residual Functional Capacity[5] (RFC) assessment to determine that Ms. Kessler had obtained transferable skills for jobs that exist in significant numbers in the national economy.  Based on these findings, the ALJ determined that Ms. Kessler was not disabled.

## III.  Review by this Court

### A. Ms. Kessler's Contentions

Ms. Kessler challenges the Commissioner's decision as flawed for three reasons:  (1) the ALJ ignored an entire line of evidence by not considering a disability determination made by another federal agency; (2) the ALJ did not properly consider Ms. Kessler's inability to sustain employment in assessing her RFC; and, (3) the ALJ did not properly discuss the evidence in light

---

[5] "Residual functional capacity" is the work a claimant can still do despite his physical and mental limitations. 20 C.F.R. § 404.1545(a); *Liskowitz v. Astrue*, 559 F.3d 736, 740 (7th Cir. 2009).

of relevant Listings. Because we find that the Commissioner did not properly consider the disability determinations of the VA, we remand for further proceedings consistent with this order.

**Standard of Review**

The ALJ's findings of fact are conclusive and must be upheld "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and a court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

When an ALJ recommends that the agency deny benefits, he must first "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). In other words, the ALJ must rest his denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade. *Id*.

**B. The Commissioner's Decision Must Be Remanded**

1. <u>This court must remand because the ALJ did not comply with SSR 06-03p</u>.

Ms. Kessler argues that the ALJ did not properly consider the VA's findings that she was disabled. Social Security Ruling (SSR) 06-03p requires the Commissioner to give the VA's disability finding "some weight." *Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir. 2006). The relevant parts of SSR 06-03p provide:

6

> [W]e are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies.  Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.
> . . .
>
> [T]he adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases.

SSR 06-03p, available at http://www.socialsecurity.gov/OP_Home/rulings/di/01/SSR2006-03-di-01.html (visited Sept. 16, 2009) (internal citations omitted).

The ALJ made no reference in his written decision to Ms. Kessler's VA disability determination.  The ALJ was aware of the disability finding because during the hearing Ms. Kessler's counsel asked the medical expert to explain the VA disability determination criteria.  The medical expert was not familiar with them and could not explain them.  (R. 665).  The ALJ even asked Ms. Kessler about whether she was still experiencing one of the same impairments (tinnitus) that had formed the basis for her VA disability determination.  (R. 675-76).  Further, the record contains her 2006 VA disability determination, which shows that Ms. Kessler's degree of impairment had deteriorated following its disability determination in 2000.  (R. 329, 572).  Further evidence in the record—in the form of notations that Ms. Kessler's sole source of income was her VA disability benefit—left no doubt that the VA had found Ms. Kessler disabled.  (R. 289).  Therefore, despite clear evidence that she had received VA disability determinations, there is no indication of what weight, if any, the ALJ gave to the VA's findings.

The Commissioner argues that the ALJ's failure to indicate in his ruling whether he considered the VA disability determination is harmless error.  The Commissioner reasons that because SSR-06-03p recognizes that the relevance of other agency disability determinations may

be limited because of different rules and standards, the ALJ's failure to consider the VA's disability determination is not reversible error because the ALJ "exhaustively considered all of the evidence within the record." (Commissioner's Br., at 20). But the ALJ did not consider all of the evidence in the record—namely, the VA disability determinations. Although the VA may have employed different criteria from those that govern the Social Security Administration, SSR 06-03p still requires that the other agency's decision be considered.

In *Wools v. Astrue*, 2009 WL 1148219, *12 (S.D. Ind. April 28, 2009), Magistrate Judge Hussmann recently ruled that the failure of an ALJ to discuss and give some weight to the Office of Personnel Management's (OPM) disability determination was harmless error. That decision is distinguishable, however, because the Commissioner in *Wools* had distinguished the OPM determination from the Social Security determination. Here, though, the ALJ's decision does not even acknowledge the VA's determination, let alone cite the applicable VA disability guidelines or attempt to distinguish them and show why they are not relevant.

The ALJ's failure to consider the VA disability determination here is more similar to another case from this district, *Hutchins v. Astrue*, Case No. 1:07-cv-1083-JMS-DFH (S.D. Ind. Sept. 13, 2008). There, the ALJ had not made any reference in his decision to the claimant's VA disability pension, even though the record contained references to it and the claimant had testified about receiving VA disability benefits. Magistrate Judge Magnus-Stinson found that SSR 06-03p is "quite clear" in its requirement that the ALJ consider a disability determination by another agency and concluded that the failure to do so was an error that required remand.

This court likewise concludes that remand is required. As in *Hutchins*, the ALJ did not reference the VA disability determinations in his decision, even though evidence of it existed in

the written record and from hearing testimony. This case is therefore remanded to the Commissioner for consideration of the VA disability determination.

    2-3.    <u>Ms. Kessler's Additional Arguments Should Be Addressed On Remand</u>.

Ms. Kessler also challenges the ALJ's RFC assessment and his determination that her impairments do not satisfy a Listing. Because consideration of the reasons why the VA found Ms. Kessler disabled could affect both of those determinations, those issues should be re-visited on remand.

## IV. Conclusion

The ALJ's failure to consider the VA's disability determinations requires this court to remand the case to the ALJ for further proceedings consistent with this order.

So ORDERED.

Date: __09/22/2009__

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov